**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


Dennis M. Mounce

    **v.**

Carolyn W. Colvin,
Acting Commissioner,
U.S. Social Security
Administration

Case No. 10-cv-560-PB
Opinion No. 2016 DNH 106


**MEMORANDUM AND ORDER**


Attorney Elizabeth R. Jones seeks $37,953.63 in attorney's fees for helping Social Security claimant Dennis Mounce win past-due disability benefits. She has filed a motion to award fees under 42 U.S.C. § 406(b), arguing that either of two fee agreements she entered into with Mounce entitle her to 25% of his past-due benefits. Both Mounce and the Social Security Commissioner oppose her request, arguing that the proposed fee is unreasonably high. Because I conclude that the parties have not adequately addressed whether Jones's fee agreements entitle her to the relief she seeks, I reserve judgment on the merits and ask for further briefing as explained below.

## I.   BACKGROUND

### A.   Procedural History

Dennis Mounce first applied for disability benefits in 2007.  Doc. No. 14-1 at 1.  His application was denied.  Id. The next year, in June 2008, Mounce applied again for disability benefits, and in October 2008 he hired Attorney Jones to represent him with his claim.  Id. at 1-2.  At the beginning of the representation, Jones and Mounce signed a contingency fee agreement.  That agreement applied only to Jones's "representation through a hearing before the Administrative Law Judge."  Doc. No. 17-1 at 6.  It provided that Jones's attorney fee "shall be equal to 25%" of Mounce's past-due benefits "or the maximum fee specified by 42 U.S.C. 406(a)(2)(A)"[1] or $5,300, "whichever is the least at the time of the ALJ decision."  Id. If Mounce lost his claim, Jones would be paid nothing.  Id.

After a June 2010 hearing, the ALJ denied Mounce's application.  Doc. No. 17 at 1.  Without signing a new fee agreement, but with Jones's ongoing assistance, Mounce appealed to the Decision Review Board.  In October 2010, the Board

---

[1] The agreement states the "maximum fee specified by 42 U.S.C. § 406(a)(20)(A)," doc. no. 17-1 at 6, but this is likely a typo, since there is no Section 406(a)(20)(A).  See 42 U.S.C. § 406(a).

affirmed the ALJ's denial.  Doc. No. 1 at 2.  Two months later, in December 2010, Jones continued to represent Mounce by filing an appeal in this court.  Doc. No. 1.  Jones and the Commissioner completed briefing in the case by May 2011.  See Doc. Nos. 7, 9.  Then, in October 2011, after the parties had filed their briefs but before I ruled on the case, Jones had Mounce sign a second fee agreement.  See Doc. No. 14-2 at 12.

That second agreement had two "tiers."  The first tier stated that if Mounce won "at any administrative level" through the first ALJ decision after the date of the agreement, Jones would receive either 25% of Mounce's past-due benefits or $6,000, whichever was smaller.  Doc. No. 17-1 at 7.  In other words, if the court remanded the case and the ALJ subsequently awarded benefits, Jones would receive either 25% of those benefits or $6,000.  The second tier, however, provided a different fee structure: if Mounce lost at the first ALJ decision after the date of the agreement, and then wished to appeal, the agreement stated that Jones "will ask SSA to approve a fee no greater than 25% of all back benefits awarded in [Mounce's] case."  Id.  In other words, if the next ALJ decision was a denial, and Mounce wished to appeal again to the Appeals Council or another entity, Jones would not be subject to a

3

$6,000 cap, and would instead "ask SSA to approve" up to 25% of any back benefits.  Id.

The second agreement, unlike the first, also contained a provision addressing attorney fees under the Equal Access to Justice Act (EAJA).  Id.  It provided that "if a court awards [Mounce] a fee under the Equal Access to Justice Act, [Mounce] assign[s] them to [Jones]."  Id.  The provision also noted that if Jones received both an EAJA fee and a fee from Mounce's back benefits, Jones would refund to Mounce the lesser of the two sums.  Id.  The agreement contained no other reference to Jones's work before the court.  See id.

In November 2011, less than a month after Mounce signed the second fee agreement, I granted Mounce's appeal and ordered a remand.  See Doc. No. 12.  Jones then represented Mounce at two more hearings before an ALJ.  In September 2013, the ALJ denied, yet again, Mounce's application.  Doc. No. 14-1 at 2.  Mounce chose to appeal that ruling to the Appeals Council.  Id.  In August 2014, the Appeals Council remanded the case to a new ALJ for yet another hearing.  Id.

While preparing for that hearing in June 2015, Jones had Mounce sign a third fee agreement.  Doc. No. 17-1 at 8.  That agreement provided that if Mounce "won at any administrative level through the first Appeals Council decision after the date

4

of this agreement, [Mounce] agree[s] that the attorney fee will be 25% of all past-due benefits." Id. (emphasis omitted). Other than an EAJA provision identical to that of the second agreement, the third agreement did not mention compensation for Jones's work before the court. See id.

Two months after the third agreement was signed, in August 2015, the ALJ approved Mounce's claim and awarded him $151,814.50 in past-due disability benefits. Doc. No. 14 at 2. In the decision, the ALJ attached a notice to Mounce stating: "I do not approve the fee agreement between you and your representative because [t]he fee agreement sets a fee that is more than the lesser of 25 percent of the past-due benefits or $6,000." Doc. No. 16-2 at 4. The notice provided instructions for reviewing this determination. Id. Jones, however, did not request review from the SSA. See Doc. Nos. 17; 16-1 at 1-2.

Instead, on March 10, 2016, Jones filed a motion for attorney fees with this court seeking 25% of Mounce's past-due benefits, or $37,953.63, as compensation for work done before the court. Doc. No. 14. A month later, on April 13, 2016, the Commissioner filed a response opposing Jones's fee request. Doc. No. 16. As part of her response, the Commissioner appended a letter that Mounce had written in January 2016 to ALJ James D'Alessandro asking D'Alessandro to deny Jones's 25% fee

5

petition.[2]  See Doc. No. 16-3.  The Commissioner cited Mounce's letter as one reason, among others, why I should reduce Jones's requested fee.

Mounce's letter made a number of accusations against Jones. Mounce claimed that he "always signed and resigned the same basic fee agreement" with Jones and made no mention of the three different agreements.  Id. at 1.  This "basic" agreement, Mounce argued, provided that Jones would receive "$5,500-$6,000," but only if Mounce won his claim.  Id.  Sometime before he won back benefits, however, Mounce was called into Jones's office to sign over a "$5,000" check in Mounce's name from the SSA.  Id. Mounce signed over the check, but stated that he "did not understand" why Jones was entitled to the money, since he had not yet won his case.  Id.

Mounce's letter also described the events leading to the signing of the third and final fee agreement.  A week before his June 2015 hearing, Mounce explained, he and his wife met with Jones at her office.  Id.  During that meeting, Mounce claims that Jones said "we needed to sign another fee agreement . . . stating she would receive 25% of the claim . . . ."  Id. According to Mounce, "this did not go over well," and "my wife

[2] It appears that ALJ D'Alessandro had already denied Jones's fee request several months earlier, but Mounce nonetheless addressed the letter to him.  See Doc. No. 16-2 at 4-5.

and I started to get very upset." Id. "My wife started crying and we did not want to sign the paper we wanted to get up and leave." Id. Mounce alleges that Jones told them "this is business" and declined to modify the agreement. Id.

Eventually Terry Daley, a partner in Jones's law firm, was called into the office. Id. at 2. Mounce allegedly told Daley that the fee agreement was "grossly excessive" and that he "knew the law stated around $6,000," not more. Id. Mounce also complained that Jones was "putting me and my family under duress at this time," and "we couldn't believe it." Id. Daley allegedly asked Jones to "just accept the normal fee agreement," but Jones declined, explaining that she had already taken the case to federal court and was entitled to 25% of Mounce's back benefits, per the agreement. Id. at 1. Mounce then asked Jones why she had received a $5,000 fee from the Social Security Administration when Mounce had not yet received anything. Id. at 2. In response, according to Mounce, Jones stated that Mounce had to sign her fee petition or "we would have to go to the hearing without her period." Id. The conversation finished with Jones saying "she would be happy with $18,000.00 which," according to Mounce, "would be really $23,000.00 including the $5,000.00 she was already paid way long before [m]y wife and I

received anything." Id. Mounce noted that he felt "we have been coerced into signing this fee Petition." Id.

Jones refutes much of this account. On May 5, 2016, she filed a reply memorandum which addressed, among other things, Mounce's letter. Doc. No. 17. She stated that she was unaware that Mounce had contacted the ALJ until the Commissioner mentioned it in her brief opposing the fee request. Id. at 1. Jones then explained that the "$5,000" that Mounce signed over to her was actually her award under the Equal Access to Justice Act (EAJA), and totaled $5,875.20 – a sum reduced from $6,912 due to Mounce's outstanding IRS debt. See id. at 2 n.1. She pointed out that the second and third agreements explicitly contained a provision allowing her to recover EAJA fees.[3] Id. at 3. Mounce, moreover, "was not asked to pay a fee prior to being awarded a benefit," and "any EAJA fee paid to counsel would be refunded to Mr. Mounce if [Jones] also received fees from Mr. Mounce's benefits for the same legal work." Id. Indeed, Jones proposes to refund the $5,875.20 EAJA fee to Mounce if her current $37,953.63 fee is granted. Doc. No. 14 at 3.

---

[3] Jones explained that the first fee agreement contained no EAJA provision because the agreement did not "allow for the possibility of a federal court complaint," and "EAJA [fees are] payable only after prevailing in federal court." Doc. No. 17 at 3.

8

Jones also provided a "line by line reply" to Mounce's letter and allegations of coercion. See Doc. No. 17-1 at 9-12. She noted that Mounce agreed to sign over the check to Jones as an assignment under the EAJA. Id. at 9-10. Jones claims that she presented Mounce with the third fee agreement "just to be clear about the existing terms of representation," even though "[i]t changed nothing" and only "reiterated that the fee was to be 25% of all past due benefits." Id. at 10. "Mr. Mounce signed the agreement after being assured that I would continue to represent him whether or not he signed it, as its main purpose was to help him understand the existing agreement," Jones wrote. Id. Indeed, she added, if she had not attended the hearing, Mounce's claim would have been denied, and no one would have received compensation. See Doc. No. 17 at 7. As to the involvement of Daley, the law partner, Jones noted that "I asked Mr Daley to join us" and "[w]e made it clear to Mr Mounce that I would continue to represent him at the upcoming hearing whether or not he signed the agreement, especially as it did not change anything." Doc. No. 17-1 at 10. Jones denied that Daley ever asked Jones to accept $6,000 in lieu of the 25% fee. See id.

Jones also noted that Mounce's alleged personal troubles may have affected his understanding of their agreement. "[P]art

9

of the reason that Mr Mounce was deprived of normalcy [in his personal life]," she explained, "was the fact that he had been incarcerated for almost 2 years, ending just months before the date of the last hearing." Id. at 10-11. She stated that she never agreed to accept $18,000 in lieu of 25% of back benefits and "did not attempt to estimate Mr Mounce's potential retroactive benefits, or agree to accept a fee of a set amount." Id. at 11. Finally, Jones responded to Mounce's allegations of coercion by stating that the third fee agreement "changed nothing" and "was intended to clarify for Mr Mounce his already existing obligation." Id. at 12. "Most claimants," she noted, "are at the lowest point of their lives when they apply for Social Security," a fact to which she is "highly sensitive." Id. She had, however, "represented [Mounce] for 7 years, obtained a psychological evaluation for him and purchased years of medical records, for which he has not paid, despite now having the ability to pay." Id. Mounce "was never asked to 'go it alone' and was not coerced." Id.

## II.  ANALYSIS

Jones argues that both the second and third fee agreements straightforwardly entitle her to 25% of Mounce's back benefits. She further maintains that a 25% fee is presumptively reasonable

10

because, among other things, she had a lawful fee agreement and expended significant time, effort and risk of nonpayment on the case. The Commissioner counters that Jones's fee request is unreasonably high and should be reduced, although she does not specify how much. In support, the Commissioner advances three arguments: (1) Jones already requested, and the ALJ denied, a fee for Jones's work at the administrative level; (2) Mounce objects to the fee and claims the fee agreements were coerced; and (3) the fee would be a "windfall." See Doc. No. 16 at 3-6.

I find the Commissioner's first argument unpersuasive, for reasons I detail below. The second and third arguments appear to hinge on whether Jones's fee agreements entitle her to the relief she seeks – an issue that the parties have not adequately briefed. As such, before deciding the motion, I direct the parties to submit further briefing in response to the two questions I outline at the end of this order. To place these questions in context, however, I begin with an overview of attorney's fees in Social Security cases. I then address the Commissioner's first argument, and conclude by outlining my request for further briefing from the parties.

## A.    <u>Attorney's Fees in Social Security Cases</u>

Attorneys who represent Social Security claimants generally receive compensation in two ways. First, if they prevail in

11

court, attorneys can recover a fee directly from the U.S. Government under the Equal Access to Justice Act (EAJA).[4] See 28 U.S.C. § 2412(d)(1)(A). Second, if the claimant is awarded past due benefits, either via a court order or an administrative ruling, the attorney may recover a portion of that award. See 42 U.S.C. § 406. Attorneys may pursue both EAJA and § 406 fees, but if both are awarded they must remit the smaller fee to the claimant. See Gisbrecht v. Barnhart, 535 U.S. 789, 796 (2002).

Each method of recovery is subject to caps and regulations that aim to prevent attorneys from taking advantage of claimants. For example, EAJA fees – which are calculated based on hourly rates – are capped in most cases at $125 per hour.[5] See 28 U.S.C. § 2412(d)(2)(A); Gisbrecht, 535 U.S. at 796. Attorneys seeking a portion of a claimant's past-due benefits must submit their fee requests for approval, either by the

---

[4] The EAJA awards fees to a "prevailing party" unless the court finds that "the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A).

[5] As explained in Gisbrecht, a "higher fee may be awarded if 'the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceeding involved, justifies a higher fee.'" Gisbrecht, 535 U.S. at 796 n.4 (citing 28 U.S.C. § 2412(d)(2)(A)(ii)).

Social Security Administration (SSA) or a federal court. See generally 42 U.S.C. § 406.

42 U.S.C. § 406 provides the statutory framework for attorneys seeking an award from a claimant's past-due benefits. Section 406(a) governs attorney's fees for representation in administrative proceedings. See 42 U.S.C. § 406(a). Section 406(b) applies to representation in federal court. Id. § 406(b). The SSA has "exclusive jurisdiction" to award attorney's fees for work done in administrative proceedings; the court has "exclusive jurisdiction" for work done in court. Clark v. Astrue, 529 F.3d 1211, 1215 (9th Cir. 2008); but see Mudd v. Barnhart, 418 F.3d 424, 428 (4th Cir. 2005) (allowing courts to consider work done before the SSA as "one factor" in determining the reasonableness of a fee for court-related work under Section 406(b)); Destefano v. Astrue, No. 05-CV-3534 (NGG), 2008 WL 623197, at *6 (E.D.N.Y. Mar. 4, 2008) (collecting cases holding the same). In other words, a grant or denial of fees for an attorney's work in one forum may not necessarily impact a grant or denial of fees for work done in the other. See Clark, 529 F.3d at 1215.

Section 406(a) provides two methods for attorneys to obtain fees for representation at the administrative level: the fee petition process and the fee agreement process. See id. at

13

1214. Under the fee petition process, once a claimant wins back benefits, the attorney may petition the SSA to award a fee. See 42 U.S.C. § 406(a)(1). The SSA, in turn, "shall . . . fix . . . a reasonable fee" to compensate the attorney, which presently may not exceed $10,000. Id.; 2 Barbara Samuels, Soc. Sec. Disab. Claims Prac. & Proc. § 21:88 (2nd ed.). No fee agreement is necessary under this process. See 42 U.S.C. § 406(a)(1).

Under the fee agreement process, on the other hand, the attorney and claimant must submit a signed contingency-fee agreement to the SSA before the ALJ decides whether or not to grant benefits. See id. at § 406(a)(2)(A). If a claimant wins back benefits, the SSA "shall approve" the fee agreement, provided that the fee does not exceed 25% of the claimant's benefits or $6,000, whichever amount is smaller.[6] Id.; see Maximum Dollar Limit in the Fee Agreement Process, 74 Fed. Reg. 6080-02 (Feb. 4, 2009) (increasing the maximum dollar limit to $6,000). Notably, "[w]hen an ALJ or other decision-maker evaluates a fee agreement, he or she is looking at the document

---

[6] The statutory text states that a fee may not exceed the lesser of 25% of back benefits or $4,000. 42 U.S.C. § 406(a)(2)(A)(ii)(II). It further provides, however, that the "Commissioner of Social Security may from time to time increase the dollar amount," subject to certain restrictions. Id. § 406(a)(2)(A). The Commissioner has increased the dollar amount over time, and it now stands at $6,000. Maximum Dollar Limit in the Fee Agreement Process, 74 Fed. Reg. 6080-02 (Feb. 4, 2009).

14

itself not at the amount of the fee which may ultimately be paid," since "no one will know what the actual fee might be until it is later calculated by the appropriate component of the SSA." Samuels, supra, § 21:77.

Section 406(b) governs fees in court, and guides my analysis here. The statute permits attorneys to recover a "reasonable fee . . . not in excess of 25 percent of the total of [a claimant's] past-due benefits," payable out of, and not in addition to, the claimant's back benefits. 42 U.S.C. § 406(b)(1)(A); Gisbrecht, 535 U.S. at 795. Most attorneys collect fees through a contingency-fee agreement with the claimant, although an agreement is not strictly required. See 42 U.S.C. § 406(b); Gisbrecht, 535 U.S. at 804 ("Traditionally and today, the marketplace for Social Security representation operates largely on a contingency fee basis.") (internal quotation marks omitted); Greenberg v. Colvin, 63 F. Supp. 3d 37, 50 (D.D.C. 2014) ("The statute . . . does not demand a contingent agreement . . . courts have held that fees under § 406(b) may be available where there is no contingency arrangement between the claimant and his counsel.").

In cases with valid fee agreements, the role of courts is to "review" these agreements "as an independent check, to assure that they yield reasonable results in particular cases."

15

Gisbrecht, 535 U.S. at 807. As the Supreme Court instructed in Gisbrecht, courts look "first to the contingent-fee agreement," ensuring that the agreement has not exceeded Congress's "boundary line" of 25% of back benefits.[7] Id. If the agreement passes this first test, courts then review the resulting fee for reasonableness. Id. Where, for example, the attorney is responsible for a delay in the case adjudication; "the benefits are large in comparison to the amount of time counsel spent on the case;" or the attorney would receive a "windfall," courts may reduce the fee. Id. at 808. If a fee is reasonable under Gisbrecht's guidelines, courts will uphold it. See id.

B.    **The ALJ's Decision to Deny Fees**

The Commissioner first argues that I should deny or reduce Jones's fee request because the ALJ previously rejected her request under Section 406(a) for work done at the administrative level. Doc. No. 16 at 3-4. This argument is unpersuasive. As explained above, fee awards under Section 406(a) are separate from fee awards under Section 406(b). See 42 U.S.C. § 406;

---

[7] Gisbrecht resolved a circuit split over the application of the "lodestar" method in Section 406(b) cases. In the past, some circuits ignored contingent-fee agreements and applied a lodestar calculation, which multiplied the number of hours reasonably worked by a reasonable hourly rate to determine an attorney's fee. See Gisbrecht, 535 U.S. at 797-99. Other circuits deferred to lawful contingent-fee agreements, so long as the resulting fee was reasonable. Id. at 799. Gisbrecht adopted the latter approach. Id. at 808-09.

16

Clark, 529 F.3d at 1215 (noting that the SSA and the court have "exclusive jurisdiction" over their respective fee awards). The ALJ awards fees for work done at the administrative level; the court awards fees for work done in court – and a decision to grant or deny fees in one forum does not necessarily influence the other.

Here, the ALJ denied Jones's fee request because her fee agreement with Mounce "set[] a fee that is more than the lesser of 25 percent of the past-due benefits or $6,000." Doc. No. 16-2 at 4. The parties do not dispute the validity of the ALJ's decision, and it appears correct: Jones's third fee agreement, signed two months before the ALJ's decision, contained no $6,000 cap. See Doc. No. 14-1 at 8. As such, the ALJ was not authorized to approve the fee. See 42 U.S.C. § 406(a)(2)(A); Samuels, supra, § 21:71 (noting that the "decision-maker will act on the most recently negotiated and signed fee agreement SSA received before the date of the favorable decision").

The Commissioner insinuates that the ALJ's denial of fees should somehow influence my ruling here, but does not explain why. See Doc. No. 16 at 3-4. I do not know why Jones drafted a fee agreement that would not entitle her to fees under Section 406(a), but it is not my duty to speculate here. I must instead turn my attention to the more difficult question of what fees,

17

if any, Jones may receive under Section 406(b) for work done before this court.

C. **The Validity of the Fee Agreements**

The Commissioner raises two more arguments. First, she points to Mounce's claim that he was coerced into signing the third fee agreement. Second, she argues that Jones's fee is a "windfall" under <u>Gisbrecht</u> and related cases. In response, Jones disputes Mounce's claims of coercion and contends that a) she and Mounce had a valid fee agreement that should receive deference under <u>Gisbrecht</u>, and b) the fee is not a windfall compared to fee awards granted by other courts in similar cases.

These arguments ignore what is, in my view, a threshold question: did Jones have an enforceable fee agreement that entitled her to compensation under Section 406(b)? Jones completed her work in this court <u>before</u> signing a fee agreement that addressed compensation for that work. The first fee agreement – which arguably expired prior to the court appeal – only addressed fees at the administrative level. Moreover, the two agreements executed <u>after</u> Jones completed her court work contemplate the possibility of an EAJA award, but otherwise appear to address only fees that could be awarded by the SSA under § 406(a), which this court lacks jurisdiction to address. Thus, a substantial question exists as to whether counsel's

18

claim for fees under § 406(b) was ever subject to an enforceable fee agreement.  If no such agreement was ever executed, it remains unclear how counsel's fee request should be addressed in light of Gisbrecht.  See, e.g., Thomas v. Astrue, 359 F. App'x 968, 973 (11th Cir. 2010) (holding unenforceable for lack of consideration a fee agreement signed after the completion of an attorney's work done in court); Artrip v. Colvin, No. 2:07cv00023, 2013 WL 1399046, at *2 (W.D. Va. Apr. 5, 2013) (finding that the fee agreement between the attorney and claimant only pertained to work before the SSA and therefore applying the lodestar method to determine fees), Sanfilippo v. Comm'r of Soc. Sec., No. 8:04-CV-2079-T-27MSS, 2008 WL 1957836, at *3 (M.D. Fla. May 5, 2008) (finding that no fee agreement existed between the attorney and the claimant and instead applying the lodestar method); Bentley v. Comm'r of Soc. Sec., 524 F. Supp. 2d 921, 925 (W.D. Mich. 2007) (same).

This case presents an unusual fact pattern and a set of unresolved legal issues.  Without a more careful treatment of these issues, I am hesitant to rule definitively on the motion before me.  I therefore direct the parties to address the following questions:

1. **Did Jones and Mounce enter into any enforceable fee agreement entitling Jones to compensation under Section 406(b)?**

2. **If no enforceable fee agreement was entered into that authorized relief under § 406(b), what standard should guide an award of fees under this Section?**

### III. <u>CONCLUSION</u>

The parties are directed to submit further briefing on the questions raised above. Attorney Jones shall have fourteen (14) days to submit a brief; the Commissioner shall then have fourteen (14) days to respond. I will then carefully consider the parties' arguments and issue an order on Jones's motion for attorney's fees (Doc. No. 14).

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

June 23, 2016

cc: Elizabeth R. Jones, Esq.
    T. David Plourde, Esq.

20