# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

——————

No. 02-2506

——————

Debbie Patrick,

                Appellant,

v.

Jo Anne B. Barnhart, Commissioner
of Social Security,

                Appellee.

\*
\*
\*
\*  Appeal from the United States
\*  District Court for the
\*  Eastern District of Missouri.
\*
\*
\*
\*

——————

Submitted: November 4, 2002

Filed: March 6, 2003

——————

Before HANSEN, Chief Judge, BEAM, and RILEY, Circuit Judges.

——————

RILEY, Circuit Judge.

Debbie Patrick (Patrick) appeals the district court's[1] affirmance of the denial of Social Security disability benefits. Patrick applied for benefits in October 1997, alleging disability since February 1, 1996, resulting from Graves' disease. After the Commissioner denied Patrick's application and once again upon reconsideration, the

---

[1]The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri, adopting the report and recommendations of the Honorable Terry I. Adelman, United States Magistrate Judge for the Eastern District of Missouri.

Commissioner granted Patrick a hearing before an Administrative Law Judge (ALJ). The ALJ determined Patrick was not disabled as defined by the Social Security Act and denied her application for benefits. Because the record contains substantial evidence to support the ALJ's finding, we affirm.

## I.    BACKGROUND

On October 21, 1997, Patrick applied for disability benefits. Patrick complained she suffered from the disabling effects of Graves' disease. Specifically, she argued pain, swelling, and spasms in her legs, knees, toes, back, wrists, and hands have left her unable to work since February 1, 1996. On January 12, 1999, after a hearing, the ALJ determined Patrick was not disabled as defined by the Social Security Act. 42 U.S.C. § 423(d)(1)(A) & (2)(A) (2000). On March 23, 2000, the Appeals Council denied her request for review. The district court affirmed the ALJ's denial of benefits.

On appeal, Patrick argues the ALJ misinterpreted important medical evidence which supported Patrick's testimony regarding her physical limitations and daily activities, and which reflected significant nonexertional limitations including fatigue, pain, swelling and heat intolerance. Patrick argues, together, these physical limitations precluded her from engaging in the full range of activities required for sedentary work.

The evidence presented during the hearing reveals that in May 1997, due to reported weight loss and eye problems, Patrick was diagnosed with Graves' disease. On July 3, 1997, Patrick's doctor noted hand tremors, eye lid lag, bulging eyeballs, large goiter, low weight (87 lbs.), increased appetite, heat intolerance, heart problems, and blurry vision. The doctor recommended radioiodine therapy. In September and October 1997, Patrick complained of pain and swelling in her feet and ankles, and also fatigue. In November 1997, Patrick's eyes were returning to normal. However, on December 2, 1997, another doctor noted Patrick's complaints with swelling in her

legs and feet, spasms, vision problems, including bulging eyeballs; however, her goiter had reduced in size. At that time, Patrick had full strength, normal gait, full range of motion and no tenderness or spasms in her back. Further, the doctor noted Patrick was recovering from Graves' disease, although it would be several months before she would respond fully to the medication. Finally, the doctor wrote, Patrick says she feels fatigued, but he noted she was making little effort to do anything.

In February 1998, Patrick told Dr. Milton Levin (Dr. Levin), her treating physician, she had cramping in her legs when she stood too long. In April, an eye doctor prescribed eye drops to help with Patrick's eyes, but Patrick failed to return for a follow up appointment. In a report dated May 21, 1998, Dr. Levin stated Patrick had limitations on "basic strength factors." Of the five factors, two were the abilities to lift and carry. Next to those two factors, Dr. Levin wrote "N/A." As to the other factors, he opined Patrick could stand and/or walk ten minutes at a time for a total of two to three hours and sit (recline) for one to one and one-half hours continuously for a total of six to seven hours. He included a limited ability to push or pull, and stated she should not climb, balance, stoop, kneel, crouch, or bend and was limited in her ability to reach. Dr. Levin stated Patrick had limited problems with her eyes and was unable to work around heights, machinery, temperature extremes, dust, fumes, humidity, and vibration. He suggested that reclining up to 30 minutes, lying down up to 30 minutes, and propping up her legs one to three times per day would be helpful.

At the hearing Patrick testified she had pain seven to eight times a day in the joints in her knees, toes, back, and wrist, but medication helped alleviate the pain. She also suffered swelling in her legs, back, wrist, and hand. She testified she had regained the weight she had lost, but her weight fluctuated. Patrick reported her eyes were dry because her eyes do not close completely. Patrick estimated she could stand for only three minutes before having spasms in her knees and could sit for only one hour before having spasms in her hips and toes. Patrick mostly reclined, watched

television and talked to her neighbors. She could lift a coffee cup, but could not lift a gallon of milk. Patrick did no housework and did not drive a car. Patrick's account of her daily activities was confirmed by her husband.

The ALJ found "no objective medical record supporting the limitations the claimant has alleged. No treating or examining physician restricted her to lying down and elevating her feet. There is no support for her allegation of spasms in her hips and knees, and . . . the claimant was unable to describe how fatigued she felt since she made little effort to do anything."

Patrick was 45 years old at the time of the hearing and has a tenth grade education. She previously worked in restaurants as a shift manager, shift supervisor, crew member, a lunch aide, cashier, and food server. The ALJ found Patrick does not have the capacity to return to her former employment. However, the ALJ determined Patrick has the residual functional capacity for a wide range of sedentary work, concluding she is not disabled as defined by the Social Security Act.

Patrick contends the ALJ's residual functional capacity determination is not based on substantial evidence. Additionally, she argues the ALJ committed reversible error by applying the Medical-Vocational Guidelines, because the ALJ failed to consider her subjective complaints of pain and physical restrictions.

## II.   DISCUSSION

### A.   Standard of Review

"We review the Commissioner's decision to deny Social Security benefits to determine if the decision is supported by substantial evidence on the whole record." Hildebrand v. Barnhart, 302 F.3d 836, 838 (8th Cir. 2002). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). "In undertaking this analysis, our court 'should neither consider a claim de

novo, nor abdicate its function to carefully analyze the entire record.'" Hildebrand, 302 F.3d at 838 (citation omitted).

### B.    Residual Functional Capacity

Patrick argues the ALJ's residual functional capacity determination was not based on substantial evidence. The ALJ discounted Patrick's subjective complaints that she needed to lie down all day, because such complaints were not supported by medical evidence. The ALJ relied on Dr. Levin's report that Patrick need only sit or recline for six to seven hours per day, and lie down 30 minutes or elevate her legs one to three times per day. The ALJ specifically noted that no doctor restricted Patrick to lying down with her feet elevated all day.

The ALJ found Patrick "has the residual functional capacity to lift and carry up to ten pounds occasionally and a nominal weight frequently, to sit for six hours of an eight-hour day." The parties dispute the weight restriction based upon different interpretations of Dr. Levin's report. Dr. Levin's report is ambiguous about the meaning of "N/A" written to the side of the questions regarding restrictions, if any, on lifting weight on an occasional or frequent basis. Patrick interprets the "N/A" to mean she should lift no weight, but the appellee and the district court interpret "N/A" to mean there are no restrictions. Patrick failed to argue her interpretation of Dr. Levin's report to the ALJ. She also failed to have Dr. Levin clarify the report or testify at the hearing. Another doctor noted normal hand grip strength and no musculoskeletal abnormalities. And another examining physician opined in May 1998, that Patrick could lift 25 pounds frequently and 50 pounds occasionally, could stand, walk or sit for 6 hours in an 8-hour day, and had no limitations on pushing and pulling. Neither the ALJ nor the parties relied on this report.

The ALJ's finding is consistent with the observations and the limitations imposed by her physicians. Patrick's remaining complaints can be addressed with medication. See Roth v. Shalala, 45 F.3d 279, 282 (8th Cir. 1995) ("If an impairment

can be controlled by treatment or medication, it cannot be considered disabling.") (citation omitted). Therefore, we find substantial evidence in the record to support the ALJ's determination.

### C. Medical-Vocational Guidelines

The ALJ determined Patrick was unable to perform her past relevant work, but had only "slight non-exertional limitations which do not significantly narrow the range of work she is capable of performing." The ALJ used the Medical-Vocational Guidelines, or GRIDS, as opposed to consulting a vocational expert, to determine whether Patrick could perform a full range of sedentary work. A claimant is entitled to have a vocational expert testify unless "the ALJ properly discredits the claimant's complaint of a nonexertional impairment." See Reynolds v. Chater, 82 F.3d 254, 258-59 (8th Cir. 1996). In this case, the nonexertional impairment is Patrick's need to lie down or recline all day due to pain, swelling and fatigue. The ALJ did not err in applying GRIDS, because the ALJ had permissibly discredited Patrick's complaints of fatigue and swelling based on the lack of evidence supporting these contentions.

## III. CONCLUSION

Because the record contains substantial evidence to support the ALJ's denial of Social Security disability benefits, we affirm the order of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.