**Sally BROWN, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.**

No. 4:04–CV–00545.

United States District Court, S.D. Iowa, Davenport Division.

July 18, 2005.

Thomas A Krause, West Des Moines, for Sally J. Brown, Plaintiff.

Richard L Richards, U.S. Attorneys Office, Des Moines, for Commissioner of Social Security unknown, Defendant.

## ORDER

PRATT, District Judge.

Plaintiff, Sally Brown, filed a Complaint in this Court on October 6, 2004, seeking review of the Commissioner's decision to deny her claim for Social Security benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* and 1381 *et seq.* This Court may review a final decision by the Commissioner. 42 U.S.C. § 405(g). For the reasons set out herein, the decision of the Commissioner is reversed.

## PROCEDURAL BACKGROUND

Plaintiff filed applications for Social Security Disability Benefits on November 16, 2001, (Tr. at 49–51 and 357–59). Plaintiff claimed to be disabled since October 30, 2001. Tr. at 49. Plaintiff was insured for disability benefits at least through the date of the ALJ's decision. Tr. at 23. After Plaintiff's applications were denied initially and on reconsideration, she requested a hearing before an Administrative Law Judge. A hearing was held January 14, 2004, before Administrative Law Judge Jean M. Ingrassia (ALJ). Tr. at 371–414. The ALJ issued a Notice of Decision—Unfavorable on April 26, 2004. Tr. at 14–25. The Appeals Council denied the request for review on August 19, 2004. Tr. at 7–9. Plaintiff filed a Complaint in this Court on October 6, 2004. On April 5, 2005, the Commissioner moved to remand so that the ALJ could further evaluate the effects of Plaintiff's obesity, and to formulate a proper residual functional capacity finding which complies with Social Security Ruling (SSR) 96–8p, and with the medical evidence. On the same day, Plaintiff resisted the motion to remand arguing that substantial evidence in the record supports a finding that Plaintiff's obesity is equivalent to impairments listed in Appendix 1, Subpart P, Regulations No. 4, thus qualifying for benefits at the third step of the sequential evaluation.

At the time of the hearing, Plaintiff was 50 years old. Tr. at 374. In her decision, applying the sequential evaluation, that ALJ found that Plaintiff had not engaged in substantial gainful activity after her alleged onset date of disability. The ALJ found that Plaintiff's severe impairments are severe sleep apnea, breathing difficulties and discogenic and degenerative disorders of the back. The ALJ found that none of these impairments qualify for benefits at the third step of the sequential evaluation. the ALJ found that Plaintiff has the residual functional capacity to lift and carry no more than 10 pounds. She found that Plaintiff is able to sit, stand and walk for about two hours in an eight hour day, and push and pull within the limits of her lifting and carrying. The ALJ found that Plaintiff is able to do her past relevant work as a telephone solicitor and has transferable skills to a wide range of sedentary occupations. The ALJ, therefore, found that Plaintiff is not disabled nor entitled to the benefits for which she applied. Tr. at 24.

## MEDICAL EVIDENCE

On June 21, 2000, Plaintiff saw Susan Caplinger, M.D. complaining of cramps in her legs with swelling. Plaintiff also complained of low back pain. It was noted that Plaintiff had a history of five C-sections, a cholecystectomy, and an appendectomy. After her gall bladder had been removed she reported bladder problems and chronic constipation for which she takes laxatives. Plaintiff's height and weight were recorded as being 61½ inches,

and 262 pounds. Dr. Caplinger diagnosed Hyperphasia, polyuria, fatigue, anxiety, hyperlipidemia, GERD, and chronic muscle pain. Tr. at 136. An x-ray of Plaintiff's lumbar spine on July 6, 2000, was negative. Tr. at 133.

Plaintiff saw G. Jennett, M.D. on July 12, 2000, for pain in her right back, hip and down the right leg. She said that at times she needed to drag her leg. Dr. Jennett continued the medication prescribed by Dr. Caplinger. Tr. at 139. On July 26, 2000, Dr. Jennett noted that an MRI had been normal (Tr. at 141), and that x-rays of Plaintiff's knees had been normal (Tr. at 142). Tr. at 137.

In 2001, Plaintiff was seen several times at River Hills Community Health Center in Ottumwa, Iowa. Tr. at 143–52. At each visit, her weight was recorded, always in excess of 260 pounds.

Plaintiff was seen at an emergency room on November 23, 2001, complaining of abdominal pain. She was observed to be uncomfortable, mildly anxious, and in moderate pain. Tr. at 166. On physical examination, her abdomen was described as large and globus. Among the laboratory reports, glucose was 167. Randall Dieleman, D.O. wrote that he thought the pain was due to an acute exacerbation of reflux disease and medical noncompliance, i.e. not taking her prescription medication. The doctor also suspected that the left lower quadrant pain was suggestive of early diverticulitis. Tr. at 161.

Plaintiff was seen for a mental status examination, at the request of Disability Determination Services by Richard A. Martin, Ph.D. on February 6, 2002. Tr. at 169–72. Plaintiff was noted to be five feet tall, and weigh 282 pounds. Plaintiff appeared short of breath during the interview—she said that she was a two pack per day smoker since age 13. Tr. at 169. Testing consisted of a mental status examination, structured interview, and Mini-Mental State Examination. In spite of Plaintiff's reported level of education, Dr. Martin noted that she appeared to be functioning in the borderline to low average intelligence range. Plaintiff endorsed some mild depression symptoms, but denied symptoms of anxiety. Tr. at 170. Dr. Martin opined that Plaintiff appeared to possess the cognitive abilities to work in simple unskilled vocational situations. Tr. at 171. Dr. Martin's diagnostic impression, on Axis I was adjustment disorder with depressed mood. He made no Axis II diagnosis. On Axis III, he diagnosed multiple medical problems associated with obesity. Tr. at 172.

Plaintiff was hospitalized between February 13, and 18, 2002 with final diagnoses of; respiratory failure with left lower lobe pneumonia; chronic obstructive pulmonary disease; cor pulmonale[1]; obstructive sleep apnea; morbid obesity; glucose intolerance, possible diabetes mellitus with hemoglobin AIC of 6.6; depressive disorder, and; Nicotine dependence. Tr. at 173–77.

The hospital discharge summary states that Plaintiff was seen by psychiatrist Dr. Gajwani (Tr. at 173), but the doctor's report does not seem to be in the record. Dr. Gajwani saw Plaintiff at the Southern Iowa Mental Health Center on May 23, 2002. The doctor made reference to the February consultation. On mental status

---

1. Cor pulmonale: chronic cor p. is characterized by hypertrophy of the right ventricle resulting from disease of the lungs, except for lung changes in diseases that primarily affect the left side of the heart and pulmonary artery and excluding congenital heart disease; acute cor p. is characterized by dilation and failure of the right side of the heart due to pulmonary embolism. In both types, characteristic electrocardiogram changes occur, and in later stages there is usually right-sided cardiac failure. Stedman's Medical Dictionary, 27th Edition

exam, the doctor described Plaintiff as being obese. Plaintiff had stopped smoking for about six weeks after her hospitalization, but had begun again. The doctor diagnosed a depressive disorder, not otherwise specified, and nicotine dependence. The doctor continued the prescription of Wellbutrin. Tr. at 246. Other treatment records from the mental health clinic are in the record from pages 241 to 246 and 288. Plaintiff returned to the clinic August 3, 2003 at which time she complained of anxiety. She told Christopher Okiishi, M.D., that she felt a sense of dread much of the time and was easily overwhelmed and upset. It was noted that Plaintiff was attending school to become a counselor and was doing fairly well. Dr. Okiishi prescribed Zoloft. Tr. at 289. Plaintiff saw Jeanette Miller, M.A., L.M.H.C. several times throughout 2002 and 2003. Tr. at 290–305.

Plaintiff was seen for a disability examination by David B. Fraser, M.D. on February 20, 2002. Tr. at 181–84. Plaintiff reported disability on the basis of chronic low back pain, respiratory distress, borderline diabetes, gastroesophageal reflux and depression. Plaintiff related her back pain to a car accident in 1995 or 96. Before, and for a time after the accident, Plaintiff had worked in a nursing home lifting patients, some as heavy as 200 pounds. Plaintiff told the doctor that her last job had been as a telemarketer. She had to quit that job due to an inability to sit or stand for extended periods of time. Tr. at 181. Plaintiff told the doctor that she had been hospitalized once for depression. Plaintiff's medications included a nicotine patch, several medications to aid breathing, an antibacterial drug, medications for blood pressure and Wellbutrin—an antidepressant. Plaintiff's weight was recorded as 283 ½ pounds. Tr. at 182. After his examination, Dr. Fraser made seven diagnoses: myofascial low back pain; markedly obese; poor flexibility, poor condition-

ing, extremely poor exercise tolerance; findings of respiratory failure with copd, suspected tobacco abuse; possible type II diabetes; suspected obstructive sleep apnea; large ventral hernia with suspected heart problems but no documented findings a this time. Tr. at 184.

Plaintiff saw Kenneth S. Wayne, M.D. on March 4, 2002, as a followup to her hospitalization. On exam, Plaintiff was described as morbidly obese with a weight of 288 lbs. Her breathing had significantly improved. Dr. Wayne's impression was COPD with intrinsic asthma and chronic cor pulmonale, and obesity hyperventilation syndrome and probable sleep apnea. Tr. at 185–86.

On March 11, 2002, Plaintiff saw a physician assistant complaining of low back, right hip and leg pain. Plaintiff reported that while she was taking steroids for her breathing problems, her back pain had diminished. The PA prescribed Vioxx and Skelaxin. Tr. at 188–89. Plaintiff received physical therapy for her back on March 28 and April 4, 2002. Tr. at 216–20.

On June 30, 2002, Dr. Wayne wrote a "to whom it may concern" letter in which he opined that Plaintiff is completely disabled due to cardio/pulmonary/sleep problems. The doctor opined that Plaintiff's medical problems preclude even sedentary work activity. Tr. at 233–34. A review of treatment reports reveals that on April 25, 2002, Dr. Wayne stated that Plaintiff was still morbidly obese, and that her weight was 298 lbs. Tr. at 237. On January 24, 2003, Dr. Wayne saw Plaintiff for a follow up examination. He noted that Plaintiff had not been awarded disability benefits in spite of his earlier opinion that she is disabled. The doctor's diagnoses were: COPD with intrinsic asthma and chronic cor pulmonale; obesity hypoventilation syndrome; severe obstructive sleep apnea; and, chronic venous insufficiency. Tr. at

310. Plaintiff saw Dr. Wayne again on November 26, 2003. She told the doctor that she had worked for three months in a cafeteria cleaning, but was unable to continue due to shortness of breath, pain in the legs and low back pain. She had also worked for a month and a half doing phone sales but found that talking on the phone caused dyspnea.[2] Plaintiff had cut her tobacco use from 3 packs per day to one. Plaintiff reported dyspnea with minimal activities such as dressing. Tr. at 319. Among other recommendations, the doctor told Plaintiff that smoking cessation was mandatory, and provided her with an action plan. Tr. at 320.

On November 17, 2003, Dr. Wayne responded to interrogatories propounded by Plaintiff's attorney. Tr. at 329–31. Dr. Wayne stated that it was his professional opinion that Plaintiff is unable to perform work on a consistent basis, even in a sedentary capacity, due to her medical conditions which cause cough, congestion, shortness of breath, fatigue, malaise and chronic edema.[3] Tr. at 330. Dr. Wayne also opined that Plaintiff's illness are chronic and would persist and preclude working at a normal pace or on a consistent basis. Dr. Wayne concluded his answers by writing: "As noted above, the conditions that preclude Sally Brown from engaging in any gainful work on a day to day basis in a regular work setting include COPD with intrinsic asthma and chronic cor pulmonale, obesity hypoventilation syndrome, severe obstructive sleep apnea." Tr. at 331. Dr. Wayne also completed a residual functional capacity questionnaire. Tr. at 336–40. Among other things, the doctor stated that Plaintiff is able to stand and walk for a total of one hour out of 8, and 5 to 10 minutes without interruption. The doctor said that Plaintiff can sit for two to four hours in a work day. The doctor said that Plaintiff would need two to four hours of rest during an eight hour day due to shortness of breath, congestion, leg swelling, and fatigue. Tr. at 337.

## ADMINISTRATIVE HEARING

Plaintiff appeared, with counsel, and testified at the hearing of January 14, 2004. Tr. at 371–414. The Court has reviewed the transcript of that hearing, but a summary of Plaintiff's testimony would not add anything to this discussion. After Plaintiff testified, the ALJ called Julie Svec to testify as a vocational expert. Tr. at 401. The ALJ told the vocational expert to assume that Plaintiff is limited to light and sedentary work, and asked if she could do any of her past relevant work. The vocational expert testified that past relevant work that could be done was telephone solicitor, apartment manager, front desk clerk and child care provider. Tr. at 401.

Next, the ALJ said to the vocational expert: "If I found her testimony totally credible and found that the record indicates that while she couldn't do light work because of the standing and walking requirements, but that she could do sedentary work activity, would the skills that she obtained from [the jobs previously identified] ... transfer to sedentary office work or any other kind of sedentary jobs." In response, the vocational expert said Plaintiff had obtained the following skills: "... the ability to communicate effectively. The ability to use a keyboard. The ability to follow written and verbal instructions.

---

**2.** Shortness of breath, a subjective difficulty or distress in breathing, usually associated with disease of the heart or lungs; occurs normally during intense physical exertion or at high altitude.

Stedman's Medical Dictionary, 27th Edition

**3.** An accumulation of an excessive amount of watery fluid in cells or intercellular tissues. *Ibid.*

To document clearly. The ability to interview others, interact appropriately with others. General knowledge of housing regulations. The ability to file numerically and alphabetically." The vocational expert said that these skills had been obtained from the work of an apartment manager, front desk clerk, and telephone solicitor. Tr. at 402. The vocational expert went on to identify some jobs in which those skills could be used. Tr. at 402–03.

In response to questions from Plaintiff's counsel, the vocational expert testified that if Plaintiff is only able to sit for two to four hours per day, the jobs she identified would not be possible. Tr. at 407.

## DISCUSSION

The scope of this Court's review is whether the decision of the Secretary in denying disability benefits is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g). *See Lorenzen v. Chater,* 71 F.3d 316, 318 (8th Cir.1995). Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support the conclusion. *Pickney v. Chater,* 96 F.3d 294, 296 (8th Cir.1996). We must consider both evidence that supports the Secretary's decision and that which detracts from it, but the denial of benefits shall not be overturned merely because substantial evidence exists in the record to support a contrary decision. *Johnson v. Chater,* 87 F.3d 1015, 1017 (8th Cir.1996) (citations omitted). When evaluating contradictory evidence, if two inconsistent positions are possible and one represents the Secretary's findings, this Court must affirm. *Orrick v. Sullivan,* 966 F.2d 368, 371 (8th Cir.1992) (citation omitted). *Fenton v. Apfel,* 149 F.3d 907, 910–11 (8th Cir.1998).

■ In short, a reviewing court should neither consider a claim de novo, nor abdi-

cate its function to carefully analyze the entire record. *Wilcutts v. Apfel,* 143 F.3d 1134, 1136–37 (8th Cir.1998) citing *Brinker v. Weinberger,* 522 F.2d 13, 16 (8th Cir. 1975). *See also Patrick v. Barnhart,* 323 F.3d 592, 595 (8th Cir.2003).

In the case at bar, the Commissioner seeks a remand and states that the ALJ will be directed to further evaluate the effect of Plaintiff's obesity on her residual functional capacity, and will be directed to formulate a proper residual functional capacity that complies with Social Security Ruling (SSR) 96–8p and which is supported by medical evidence. The Commissioner states that the ALJ will obtain supplemental vocational expert testimony, if necessary.

Plaintiff, on the other hand points out that when the vocational expert considered the residual functional capacity found by the ALJ (see Tr. at 24), it was her testimony that no work is possible. Plaintiff also argues that Plaintiff has a body mass index consistently above 51, and as high as 56.3. According to SSR 02–1p, a body mass index above 40 is considered extreme. Plaintiff argues that Plaintiff's obesity is severe enough to equal impairments found in Appendix 1, Subpart P, Regulations No. 4, and that this impairment qualifies for an award of benefits at the third step of the sequential evaluation. As a result, Plaintiff argues, a remand to take additional evidence would only delay the receipt of benefits to which Plaintiff is clearly entitled.

■ After a thorough review of this record, the Court agrees with the parties that the ALJ's decision is not supported by substantial evidence on the record as a whole. Although counsel makes a strong argument that Plaintiff qualifies for benefits at the third step of the sequential evaluation, the Court is of the opinion that

the record is more clear that Plaintiff prevails at the fifth step.

The Court agrees with the Commissioner that the ALJ did not ask a proper hypothetical. Essentially, all the ALJ did was to ask the vocational expert to consider that Plaintiff is limited to light and sedentary work. She later asked the expert to consider Plaintiff's testimony credible. This will not pass muster under 8th Circuit case law. In *Baugus v. Secretary of Health & Human Services,* 717 F.2d 443, 447 (8th Cir.1983), the Court held that a hypothetical question must set out all of the impairments, including pain. The Court wrote:

A vocational expert cannot be expected to assume the evidence and testimony and then state an opinion as to whether a claimant has residual skills that can be transferable to other occupations. The result of such a procedure is to require vocational experts to make credibility findings, weigh and balance conflicting evidence, and interpret often complicated medical documents and testimony. The ALJ must enumerate the claimant's impairments and must include in his consideration allegations of pain and other nonexertional impairments.

Here, the ALJ simply asked the vocational expert, first, to assume that the claimant could do light and sedentary work, and, second, to assume that the testimony was credible and that the claimant was limited to sedentary work. There was no enumeration of impairments or limitations as required. Had the hearing stopped at this point, a remand for further evidence would be necessary. However, counsel went on to ask hypothetical questions which relied on Plaintiff's testimony and on the medical testimony of Plaintiff's treating physician, Dr. Wayne. In response to those questions, the vocational expert testified that no work is possible.

In her decision, the ALJ adopted the opinion of Dr. Wayne that Plaintiff is limited to lifting 10 pounds, and that she can sit, stand and walk for two hours of an eight hour work day. Tr. at 24. Nevertheless, the ALJ adopted the vocational expert's testimony to the questions which had no specific limitations. The ALJ's finding that Plaintiff is able to do some of her past relevant work and has transferable skills to other work, therefore, is not supported by substantial evidence on the record as a whole.

In *Baugus,* at 448, the Court wrote: "Because we find substantial evidence on the record as a whole that Baugus was disabled, we need not remand the case to the ALJ for further proceedings. Therefore, we reverse the district court's grant of summary judgment and order an award of disability benefits to Baugus." Likewise, in *Butts v. Barnhart,* 388 F.3d 377, 385–86 (2nd Cir.2004), a case in which the Court of Appeals was asked to review the district court's order of remand, the Court wrote that if there are gaps in the record, remand for further development of the evidence is appropriate. On the other hand, wrote the Court: "[W]here this Court has had no apparent basis to conclude that a more complete record might support the Commissioner's decision, we have opted simply to remand for a calculation of benefits."

■ In the case at bar, the vocational expert's testimony, when considering limitations which were later adopted by the ALJ, was that Plaintiff is unable to work. It is clear, therefore, that Plaintiff's should prevail at the fifth step of the sequential evaluation. A remand for development of the record at the third or fifth steps would only cause an unnecessary delay in Plaintiff's receipt of her benefits.

## CONCLUSION AND DECISION

It is the holding of this Court that Commissioner's decision is not supported by substantial evidence on the record as a whole. The Court finds that the evidence in this record is transparently one sided against the Commissioner's decision. *See Bradley v. Bowen,* 660 F.Supp. 276, 279 (W.D.Ark.1987). A remand to take additional evidence would only delay the receipt of benefits to which Plaintiff is entitled.

The final decision of the Commissioner is reversed and the Commissioner is ordered to award Plaintiff the benefits to which he is entitled. Plaintiff has been disabled since October 30, 2001, after which the ALJ found no substantial gainful activity.

The judgment to be entered will trigger the running of the time in which to file an application for attorney's fees under 28 U.S.C. § 2412(d)(1)(B) (Equal Access to Justice Act). *See also, McDannel v. Apfel,* 78 F.Supp.2d 944 (S.D.Iowa 1999) (discussing, among other things, the relationship between the EAJA and fees under 42 U.S.C. § 406 B), and LR 54.2(b).[4] *See also, Gisbrecht v. Barnhart,* 535 U.S. 789, 122 S.Ct. 1817, 1821, 152 L.Ed.2d 996 (2002).

IT IS SO ORDERED.

---

4. N.B. Counsel is reminded that LR 54.2(b), states that an EAJA application "must specifically identify the positions taken by the government in the case that the applicant alleges were not substantially justified."