Marcellus J. **RICKERTSEN**, Plaintiff,

v.

**Jo Anne B. BARNHART,
Commissioner of Social
Security, Defendant.**

No. 3:04–CV–142.

United States District Court,
S.D. Iowa,
Davenport Division.

Aug. 12, 2005.

Michael DePree, Bowman & DePree, Davenport, IA, for Plaintiff.

Richard L. Richards, U.S. Attorney's Office, Des Moines, IA, for Defendant.

## ORDER

PRATT, District Judge.

Plaintiff, Marcellus J. Rickertsen, filed a Complaint in this Court on November 30, 2004, seeking review of the Commissioner's decision to deny his claim for Social Security benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* This Court may review a final decision by the Commissioner. 42 U.S.C. § 405(g). For the reasons set out herein, the decision of the Commissioner is reversed and remanded for further administrative proceedings.

## BACKGROUND

Plaintiff filed an application for Social Security Disability Benefits on August 20, 2002, claiming to be disabled since July 15, 2001. Tr. at 65–67. Plaintiff is insured for disability benefits through December of 2006. Tr. at 68. Plaintiff, whose date

of birth is March 28, 1955 (Tr. at 65) was 48 years old at the time of the hearing. After the applications were denied, initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge. A hearing was held before Administrative Law Judge Norman R. Buls (ALJ) on February 4, 2004. Tr. at 231–46. The ALJ issued a Notice Of Decision—Unfavorable on February 24, 2004. Tr. at 12–50. After the decision was affirmed by the Appeals Council on October 8, 2004, (Tr. at 5–9), Plaintiff filed a Complaint in this Court on November 30, 2004.

In the decision, the ALJ found that Plaintiff has not engaged in substantial gainful activity at any time pertinent to the decision. At the second step of the sequential evaluation, the ALJ found that Plaintiff has severe impairments consisting of status post arthroscopic repair of the left medial meniscus tear; and, left peroneal nerve palsy of he left lower extremity with foot drop. The ALJ found that the impairments were not severe enough to qualify for benefits at the third step of the sequential evaluation. The ALJ found that Plaintiff has the residual functional capacity:

> ...to perform the physical sedentary work (20 C.F.R. 404.1545). Claimant has the ability to lift/carry ten pounds occasionally, up to ten pounds frequently, stand and/or walk at least two hours with breaks during an eight hour workday, and sit continuously with breaks every two hours for about six hours in an eight hour workday with no crawling.

The ALJ found that Plaintiff is not able to perform his past relevant work as a millwright, and has not acquired transferable skills. Based on Rule 201.21, of the medical vocational guidelines, the ALJ found that Plaintiff is not disabled nor entitled to the benefits for which he applied. Tr. at 20–21.

## MEDICAL EVIDENCE

In March 1987, Plaintiff was involved in a motor vehicle accident in which he sustained an L1 burst fracture and multiple foot fractures. He underwent surgery for these injuries on March 8 (Tr. at 170), and March 23 (Tr. at 166), 1987. When he was seen six months after the last surgery, on August 27, 1987, he had recovered and was released to resume his job.

On August 31, 2001, Plaintiff underwent arthroscopy, partial medial meniscectomy, shaving of the medial femoral condyle and patella left knee under the care of Peter Rink, D.O. Tr. at 116. Plaintiff had sustained a work injury on July 3rd when he tripped over a pallet of pipes. Tr. at 114.

On May 31, 2002, after a physical examination and review of the history, R.F. Neiman, M.D. opined that Plaintiff would require either a high tibial osteotomy and eventually a total knee replacement. The doctor opined that Plaintiff would have difficulty with tasks requiring flexion of the knee. He said that bending, squatting or kneeling would be next to impossible. Plaintiff would have difficulty climbing ladders or stairs. He said that Plaintiff would need to change positions. The doctor opined that Plaintiff would eventually begin to have problems with his right knee due to the stress placed on it because of the injury to the left knee. The doctor wrote: "It is my opinion that the level of impairment of 13% of the whole person and the functional restrictions noted above would relate to his injury which originally occurred on or about 07/03/2001." Tr. at 117–18.

On August 23, 2002, Dr. Rink operated on Plaintiff again, and performed a proximal tibial osteotomy left knee. Tr. at 127.

On September 2, 2002, Plaintiff went to an emergency room complaining that his left leg hurt and was numb. Plaintiff reported that a new cast had been put on his

leg on August 30, 2002. While he was in the emergency room, Michael J. Foggia, D.O., cut the cast off. Charles T. Cassel, M.D. arrived in the emergency room and assumed the care of Plaintiff. Tr. at 122–23. Dr. Cassel, said that Plaintiff complained of foot drop and numbness and tingling of the left foot. The diagnosis was late onset peroneal nerve palsy with foot drop. Tr. at 120. Plaintiff was told to elevate his leg, use crutches with only touch weight-bearing. The doctor placed Plaintiff in a Bledsoe brace. Plaintiff was referred to Dr. Rink. Tr. at 121. In a note dated September 3, 2002, Dr. Rink noted that on examination the previous Friday, Plaintiff had no signs of the foot drop. On physical examination on September 4, 2002, Plaintiff was unable to pull his foot up. He was unable to pull the medial two toes and could not move them, demonstrating complete absence of anterior tib and EHL function. Tr. at 190. When seen on September 9, 2002, Plaintiff appeared to have improved function and reported that he had been able to can tomatoes. Plaintiff told the doctor that he was "kind of down in the dumps…" Tr. at 189. On October 7, 2002, Plaintiff continued to be depressed and told Dr. Rink that both his knees hurt him. The foot drop was improving, and the x-rays of Plaintiff's knee showed improvement. Tr. at 188. When Plaintiff was seen November 4, 2002, he told the doctor that he had been falling. Tr. at 186. On January 24, 2003, Dr. Rink wrote that he had talked to a doctor at the University of Iowa about the possibility of surgical decompression and nerve grafting to improve the foot drop. Tr. at 182.

Plaintiff underwent physical therapy at Clinton Physical Therapy from September 20, 2001 through December 13, 2002. Tr. at 142–55. He underwent physical therapy at West Gate Physical therapy in January 2003. Tr. at 175–80.

On December 19, 2002, Nitin K. Sharma, M.D., performed nerve conduction and EMG studies which showed evidence of common peroneal neuropathy over the left lower extremity and denervation potential over the muscles controlled by that nerve. Tr. at 220. In a letter dated December 23, 2002 to Dr. Rink (Tr. at 215–17), Dr. Sharma diagnosed a common peroneal nerve palsy of the left lower extremity. Dr. Sharma recommended conservative therapy with physical therapy and adjustment of the ankle/foot cast. Plaintiff was given a prescription for Neuronitn and advised against the use of Darvocet. Tr. at 216–17. When Plaintiff saw Dr. Sharma on May 7, 2003, there had been no significant improvement in the foot drop. Plaintiff complained of numbness and tingling over the left ankle and lower leg, and reported using a foot rest. On examination, Plaintiff had weakness of his left foot dorsiflexor. Plaintiff's gait was stable. Since it had been nine months since the injury, Dr. Sharma reported that further improvement was not expected. Tr. at 212.

## ADMINISTRATIVE HEARING

Plaintiff appeared with counsel at the hearing on February 4, 2004. Plaintiff testified to pain in his hips and knees. He said that his right hip and swelled and that his doctor told him that it was because of the way he had been walking. Tr. at 237. Plaintiff said that Dr. Rink is proscribing Vicodin for his pain. Tr. at 242. Plaintiff said that his doctor had given him some Zoloft for his depression. Nevertheless, he said, he felt lethargic and absent-minded. He said he needed to carry a notebook to keep from forgetting things. Tr. at 238.

The ALJ did not call a vocational expert to testify.

## DISCUSSION

The scope of this Court's review is whether the decision of the Secretary in denying disability benefits is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g). *See Lorenzen v. Chater*, 71 F.3d 316, 318 (8th Cir.1995). Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support the conclusion. *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir.1996). We must consider both evidence that supports the Secretary's decision and that which detracts from it, but the denial of benefits shall not be overturned merely because substantial evidence exists in the record to support a contrary decision. *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir.1996) (citations omitted). When evaluating contradictory evidence, if two inconsistent positions are possible and one represents the Secretary's findings, this Court must affirm. *Orrick v. Sullivan*, 966 F.2d 368, 371 (8th Cir.1992) (citation omitted). *Fenton v. Apfel*, 149 F.3d 907, 910–11 (8th Cir.1998).

In short, a reviewing court should neither consider a claim de novo, nor abdicate its function to carefully analyze the entire record. *Wilcutts v. Apfel*, 143 F.3d 1134, 1136–37 (8th Cir.1998) citing *Brinker v. Weinberger*, 522 F.2d 13, 16 (8th Cir.1975). *See also Patrick v. Barnhart*, 323 F.3d 592, 595 (8th Cir.2003).

In *McCoy v. Schweiker*, 683 F.2d 1138, 1148 (8th Cir.1982)(en banc), the Court held that if a claimant has nonexertional impairments such as pain or depression, to mention only the two present in the case at bar, the medical vocational guidelines are not controlling and cannot be used to direct a conclusion of disabled or not disabled without regard to other evidence, such as vocational expert testimony.

It should be noted that Plaintiff cites *McCoy* to support the argument that the Commissioner bears the burden of proof on the question of residual functional capacity. Defendant takes the contrary position. Counsel is correct that *McCoy* held, as he argued, that the burden to proof shifts to the Commissioner after a finding that the claimant cannot return to past relevant work. The Commissioner bears the burden to prove the existence of other jobs. "This burden includes the duty to establish by medical evidence that the claimant has the requisite RFC." *McCoy.* at 1147. More recent cases, however, have held that the claimant bears the burden to prove residual functional capacity at step four of the sequential evaluation. *See, e.g. Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir.2004) citing *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004). This Court is not in a position to overrule decisions of the Court of Appeals, and must follow the precedents of that Court. *See Holst v. Bowen*, 637 F.Supp. 145, 148 (E.D.Wash.1986).

The Court is also aware that the regulations regarding the assessment of residual functional capacity were revised on August 26, 2003. 20 C.F.R. § 404.1520(a)(4)(iv) states that the Commissioner's assessment of the claimant's residual functional is assessed at step four of the sequential evaluation. 20 C.F.R. § 404.1545(a)(3) states that the responsibility of producing evidence of residual functional capacity rests with the claimant. "However ... we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help you get medical reports from your own medical sources." *Id.* The preamble to the change in the rules published at 68 FR 51153, 2003 WL 22001943 states very clearly, at 51155, that the administrative process is designed to be non-adversarial.

As the Court of Appeals observed in *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994) ... "an administrative hearing is not an adversarial proceeding. [citation omitted] '[T]he goals of the Secretary and the advocates should be the same: that deserving claimants who apply for benefits receive justice.' [citation omitted]." Thus, while the claimant bears the burden of proving disability, the Commissioner bears the burden of fully and fairly developing the record. There is no dispute that residual functional capacity is assessed on the basis of all the evidence, but must be supported by some medical evidence. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004) ("The ALJ must determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his or her limitations.")

■ The Eighth Circuit has also held that reliance on the medical vocational guidelines is permitted when the ALJ properly finds that the claimant is able to perform the full range of work contemplated by the guidelines. *See, e.g. Patrick v. Barnhart*, 323 F.3d 592, 596 (8th Cir.2003) in which the ALJ found that the claimant had only slight nonexertional impairments. The Court wrote: "The ALJ did not err in applying GRIDS, because the ALJ had permissibly discredited Patrick's complaints of fatigue and swelling based on the lack of evidence supporting these contentions." *Id.* In the case at bar on the other hand, Plaintiff's complaints of nonexertional impairments are supported by physical examinations, surgeries, and prescriptions for strong pain medication. Although the ALJ found that Plaintiff's allegations with regard to the severity and functional consequences of his symptoms were not fully credible, the ALJ acknowledged that Plaintiff has an underlying medically determinable impairment that could possibly cause some pain and other symptoms. Tr. at 20. For all theses reasons, therefore, the Court holds that reliance on the medical vocational guidelines for a finding of not disabled was not proper.

■ Here, because the ALJ did not call a vocational expert, it cannot be said that the final decision of the Commissioner is supported by substantial evidence on the record as a whole in light of Plaintiff's well established claims of pain, and less well established claim of depression. On remand, the ALJ shall ask a vocational expert a hypothetical question which takes into accounts all the credible impairments and limitations supported by the record. *See Ness v. Sullivan*, 904 F.2d 432, 436 (8th Cir.1990) (... "vocational expert testimony elicited by hypothetical questions that fail to relate with precision the physical and mental impairments of the claimant cannot constitute substantial evidence to support the Secretary's decision.")

The ALJ and counsel shall work together to see that the record is fully and fairly developed not only on Plaintiff's physical limitations, but also on his mental impairments and limitations. Although there has been suggestions of depression[1] in the record, the Court would note that no diagnosis is found in the record as it now stands. Since Plaintiff testified that he is taking Zoloft, there may now be a diagnosis. On remand counsel and the ALJ shall cooperate to ensure a fully and fairly developed record.

---

1. The Court is aware of the ALJ's comment that Plaintiff had seen a psychiatrist on two occasions who prescribed medication. Tr. at 17. It is clear that paragraph was erroneously place in this decision. Nevertheless, Plaintiff has been given antidepressants and this illness should be developed and properly considered by the ALJ on remand.

## CONCLUSION AND DECISION

It is the holding of this Court that Commissioner's decision is not supported by substantial evidence on the record as a whole. The final decision of the Commissioner is reversed and remanded for further proceedings consistent with this opinion.

The judgment to be entered will trigger the running of the time in which to file an application for attorney's fees under 28 U.S.C. § 2412(d)(1)(B) (Equal Access to Justice Act). *See also, McDannel v. Apfel,* 78 F.Supp.2d 944 (S.D.Iowa 1999) (discussing, among other things, the relationship between the EAJA and fees under 42 U.S.C. § 406 B), and LR 54.2(b)[2]. *See also, Gisbrecht v. Barnhart,* 535 U.S. 789, 122 S.Ct. 1817, 1821, 152 L.Ed.2d 996 (2002); *Mitchell v. Barnhart,* 376 F.Supp.2d 916 (S.D.Iowa 2005).

IT IS SO ORDERED.

---

**2.** N.B. Counsel is reminded that LR 54.2(b), states that an EAJA application "must specifically identify the positions taken by the government in the case that the applicant alleges were not substantially justified."