Donald D. BERGQUIST, Plaintiff,

v.

Michael J. ASTRUE, Commissioner of Social Security, Defendant.

No. 3:10–cv–74 RP–CFB.

United States District Court,
S.D. Iowa,
Central Division.

March 7, 2011.

1126

Robert J. Engler, Swanson Engler Gordon Benne & Clark LLLP, Burlington, IA, for Plaintiff.

Gary L. Hayward, United States Attorney, Second FLR Courthouse Annex, Des Moines, IA, for Defendant.

## MEMORANDUM OPINION AND ORDER

ROBERT W. PRATT, Chief Judge.

Plaintiff, Donald D. Bergquist, filed a Complaint in this Court on June 10, 2010, seeking review of the Commissioner's decision to deny his claim for Social Security benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* This Court may review a final decision by the Commissioner. 42 U.S.C. § 405(g).

In a decision dated November 9, 2001, Administrative Law Judge Jean M. Ingrassia, wrote that Plaintiff filed an application for a period of disability and disability insurance benefits on June 5, 2000. Tr. at 53. Judge Ingrassia noted that a prior application had been denied by Administrative Law Judge Gary L. Vanderhoof on May 2, 1994. No appeal was made of that decision. Because of the length of time between Judge Vanderhoof's decision and the application before Judge Ingrassia, she determined that the prior application could not be reopened. Tr. at 54. Judge Ingrassia wrote that Plaintiff was last insured for Title II benefits on December 31, 1995, and, therefore, he must establish his disability before December 31, 1995. Judge Ingrassia wrote that it had been determined that Plaintiff had engaged in substantial gainful activity from August 1992 through December 31, 1995, disqualifying him for Title II bene-fits. As a result, no medical development was undertaken by Disability Determination Services. Judge Ingrassia found that Plaintiff had been confused when he completed a work activity report and she held that he had not begun working until January of 1997. Tr. at 55. Judge Ingrassia found that Plaintiff had begun his work activity with the assistance of the Iowa Department of Vocational Rehabilitation Services who supplied him with tools and other necessary materials to operate a business. Because she held Plaintiff had not engaged in substantial gainful activity, she remanded the case for development of medical evidence and for a determination if work activity between January 1997 and August 1999, was substantial gainful activity. Tr. at 56.

On April 25, 2003, Administrative Law Judge John E. Sandbothe issued a Notice of Decision—Denial of an application dated June 20, 2000. Tr. at 63–73. Judge Sandbothe noted Judge Vanderhoof's and Judge Ingrassia's decisions. He wrote: "The issues are whether the claimant, during the closed period May 3, 1994, through December 31, 1995, is 'disabled' and entitled to a period of disability and disability insurance benefits ..." Tr. at 67. Judge Sandbothe's review of the medical evidence consisted of a consultative examination dated August 29, 1995, at which Plaintiff complained of "some pain discomfort in the legs and arms," and problems with his bowels and with diarrhea. On physical examination Plaintiff appeared well developed, well nourished and not in much distress. The examination resulted in unremarkable findings. X-rays of Plaintiff's neck were unremarkable with the exception of some minimal neural foraminal narrowing. Tr. at 68.

Treatment notes from Sherman Williams, M.D., showed that Plaintiff complained of right lower quadrant abdominal

pain-ever present, worse after drinking milk and after eating. A CT scan of the abdomen showed "unusually prominent gaseous distention of the entire length of the colon." Dr. Williams follow up notes did not contain adverse physical findings. Tr. at 69.

Judge Sandbothe noted that Plaintiff was seen by David Elliott, M.D. on August 8, 1995, at which time Plaintiff reported constant achy right upper and left lower quadrant pain. Plaintiff also reported that he had no bowel movements for 35 days. Tr. at 70. Judge Sandbothe found Plaintiff had the residual functional capacity for light work and stopped the sequential evaluation at the fourth step, finding that Plaintiff had the ability to perform his past relevant work. Tr. at 73. To repeat, Judge Sandbothe's decision was April 25, 2003.

On December 5, 2003, Sherman A. Williams, M.D., a gastroenterologist, wrote that he had treated Plaintiff since 1995. Although there did not seem to be an actual diagnosis, Plaintiff's complaints had been chronic and debilitating. Symptoms included abdominal pain and discomfort, severe constipation associated with nausea and vomiting. The doctor described a test—sitz marker colonic study—which showed that Plaintiff's colon barely moves at all. The doctor said that none of the medications used to control and improve the symptoms have worked. Tr. at 230. See also, Dr. Williams' treatment notes at Tr. pages 328–33.

On January 5, 2005, Administrative Law Judge George Gaffaney (hereafter the ALJ) issued a Notice of Decision–Denial (Tr. at 84–92) based on an application for Title XVI (SSI) benefits filed August 16, 2002. Tr. at 92. It is this application for SSI benefits that is the subject of this judicial review complaint.

Plaintiff received treatment at the University of Iowa hospitals and clinics. In a note which was dictated October 10, 2005, it is written that Plaintiff, while being seen for an episode of pain in his testicles, "He has significant bowel dysfunction such that he has a bowel movement in the past only once per month, but currently it has increased to a frequency of 3 bowel movements per month." Tr. at 316.

The ALJ wrote:

Claimant also testified that he has irritable bowel syndrome, testifying that this colon was damaged by a virus, and that he has only one bowel movement per month. He also alleged nausea, vomiting, bloating, abdominal pain, and loss of appetite, testifying that his stomach has bothered him for nine years. He also alleged significant weight loss, having lost twenty-five pounds in the past eight months. He described limited physical abilities, testifying that any type of movement jars his abdomen area, causing nausea and discomfort. It is also difficult for him to walk or sit for prolonged periods, and alleged that he can lift only five pounds. He also alleged fatigue due to a lack of nutrition and poor sleep, and described limited activities of daily living. He also alleged a skin condition for which he applies creams, and testified that he is depressed over his inability to work.

Tr. at 89. The ALJ found Plaintiff's allegations were not consistent with the medical signs and findings and the treating and examining physician's reports. Id. The ALJ wrote that he found "little underlying evidence to support claimant's claims of disabling abdominal pain and discomfort." Further, he wrote that Plaintiff's pain could be accommodated by a job which would not involve jarring or vibration. Tr. at 90. The ALJ's hypothetical to the vocational expert was:

If for my first hypothetical we assume that we have the limitations of occasion-

ally lifting 20 pounds, frequently lifting 10 pounds, ability to stand six hours in an eight-hour workday, sit six hour's in an eight-hour workday, be able to frequently or I should say occasionally avoid hazards, vibrations and noise, assuming those limitations, would Mr. Bergquist be able to perform his past relevant work?

The vocational expert testified that Plaintiff's past work would be possible. Tr. at 404. The ALJ found Plaintiff could perform the duties of a mobile home repairer as he performed it. Tr. at 91. As a result the Plaintiff's claim was denied in the Administrative Law Judge's decision of January 5, 2005. Tr. at 84. The Plaintiff sought timely review through the Appeals Council of the Social Security Administration. The Appeals Council remanded this claim back to the Administrative Law Judge on February 24, 2007. Tr. At 114–18.

The Administrative Appeals Judges wrote that the ALJ's "conclusions regarding the claimant's residual functional capacity are not consistent with the evidence of record, and/or were not reached in accordance with 20 C.F.R. 416.954 [416.945] and Social Security Ruling 96–8p." Tr. at 115. Criticizing the ALJ's credibility finding, which the judges said "appears to have been primarily based on the objective evidence," the Appeals Council wrote:

> The decision must contain specific reasons for the credibility finding, supported by the evidence of record, and must be sufficiently specific to make clear the weight given the individuals's statements and the reasons for that weight. Further, an individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence (Social Security Ruling 96–7p).

Tr. at 116.

In the decision of January 3, 2008, the ALJ wrote that he "adopt[ed] the findings of the Disability Determination Services medical consultant, who concluded that the claimant could perform light work without concentrated exposure to noise, vibration and hazards." The ALJ quoted Dr. Williams letter (Tr. at 24–25) and then wrote:

> However, this statement does not bind the undersigned to find the claimant disabled for the following reasons. First, medical doctors are qualified to express an expert opinion about what specific work-related functions an individual can or cannot perform due to medical impairments. However, Dr. Williams's letter does not state any specific work-related limitations to support the general conclusion of "inability to work." Instead, it only lists the claimant's subjective complaints and symptoms. Second, Dr. Williams's letter admits that the results of all diagnostic testing, except for the colonic sitz study, have been negative, and that no diagnosis has been made. Third, although Dr. Williams mentions the claimant being a patient since 1995, the record does not confirm that the claimant has sought treatment very frequently. See Exhibit C5F, which confirms only four appointments in the time frame of 2000 to 2001, several years before Dr. Williams's letter. Fourth, the undersigned considers additional evidence dated subsequent to Dr. Williams's letter. Specifically, an anal manometry test performed in December 2004 by Satish Rao, M.D., indicated that the claimant has a normal anal sphincter profile, normal reflex response, normal sensation, and a normal ability to expel stools, which excludes any significant

anal sphincter dysfunction. When Dr. Williams wrote his letter, he did not have the normal results of this objective diagnostic testing to consider in evaluating the claimant's complaints, for which he admittedly had no diagnosis.

Tr. at 25.

The ALJ's credibility finding is found beginning at page 21 of the record. More will be said about this finding in the Discussion below.

## DISCUSSION

■ We will affirm the ALJ's decision "[i]f the ALJ's findings are supported by substantial evidence on the record as a whole," an inquiry that requires us to consider evidence in the record that detracts from the ALJ's decision. *Wagner v. Astrue,* 499 F.3d 842, 848 (8th Cir. 2007). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the decision." *Reutter ex rel. Reutter v. Barnhart,* 372 F.3d 946, 950 (8th Cir.2004).

We will not reverse the ALJ's "denial of benefits so long as the ALJ's decision falls within the 'available zone of choice.'" *Bradley v. Astrue,* 528 F.3d 1113, 1115 (8th Cir.2008). The decision of the ALJ "is not outside the 'zone of choice' simply because we might have reached a different conclusion had we been the initial finder of fact." *Id.* (quoting *Nicola* [*v. Astrue* ], 480 F.3d [885] at 886 [8th Cir.2007] ). Rather, "[i]f, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Goff v. Barnhart,* 421 F.3d 785, 789 (8th Cir.2005). *Owen v. Astrue,* 551 F.3d 792, 798 (8th Cir.2008.) The substantial evidence on the record as a whole test requires a scrutiniz-

ing analysis which requires consideration of supporting as well as detracting evidence. *Gavin v. Heckler,* 811 F.2d 1195, 1199 (8th Cir.1987), citing *Universal Camera Corp. v. National Labor Relations Bd.,* 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951). In short, a reviewing court should neither consider a claim de novo, nor abdicate its function to carefully analyze the entire record. *Wilcutts v. Apfel,* 143 F.3d 1134, 1136–37 (8th Cir.1998) citing *Brinker v. Weinberger,* 522 F.2d 13, 16 (8th Cir.1975).

■ The most critical piece of evidence in this case is the report of Dr. Williams in which he explains the reason for Plaintiff's disability is that his colon does not process food the way it is suppose to. The ALJ's reasons for not attaching greater weight to that report do not withstand the scrutinizing analysis this Court is required to apply.

■ A treating physician's opinion is entitled to substantial weight. In *Forehand v. Barnhart,* 364 F.3d 984, 985 (8th Cir. 2004), the Court, quoting *Kelley v. Callahan,* 133 F.3d 583, 589 (8th Cir.1998), wrote: "A treating physician's opinion is generally entitled to substantial weight, although it is not conclusive and must be supported by medically acceptable clinical or diagnostic data." The diagnostic data which supports Dr. Williams report is the sitz marker colonic study.

It is worthwhile to note Dr. Williams' qualifications. The doctor graduated from medical school from the University of Pennsylvania in 1981. He receive gastroenterology residency training at the University of Louisville School of Medicine, and internal medicine training at the University of Iowa Hospitals and Clinics. Tr. at 232.

The ALJ wrote Dr. Williams did not state any specific work-related limitations. That is because Plaintiff's impairment, un-

like many impairments, does not result in specific exertional limitations. Plaintiff is not disabled because he is unable to sit or stand for specific lengths of time, or because he is unable to lift more than a certain amount of weight. Plaintiff is disabled because of chronic illness. The objective laboratory evidence shows that he has very infrequent bowel movements, and the doctor states this results in severe constipation, abdominal pain and severe nausea and vomiting. This is what causes Plaintiff's "inability to work." When Dr. Williams refers to Plaintiff's "inability to work," he is not rendering a legal opinion, it is a medical opinion based on the symptoms resulting from his inability to have bowel movements.

■ The ALJ pointed to Dr. Williams statement that the results of all diagnostic testing, except for the colonic sitz study, have been negative, and that no diagnosis has been made. In the first place, a specific diagnosis is not necessary to prove a disability claim. *See, e.g. Jackson v. Bowen,* 873 F.2d 1111, 1113 (8th Cir.1989) in which the Court, quoting *Sparks v. Bowen,* 807 F.2d 616, 616–17 (7th Cir.1986), wrote: "Pain and fatigue associated with a medically ascertainable cause may disable a person for purposes of the [Social Security] Act." In the second place, the colonic sitz study which showed that Plaintiff's colon simply does not move food so that it can be properly digested is ample objective evidence to support Dr. Williams opinion and Plaintiff's subjective complaints.

The ALJ noted that Plaintiff's visits to Dr. Williams were infrequent; that in 2000–2001 he saw the doctor four times. The medical record in this case is admittedly sparse, to say the least. Nevertheless, there is no evidence that more frequent doctor's visits would in anyway alleviate Plaintiff's symptoms. The record is also silent on the question of whether further inquiry to Dr. Williams would yield additional treatment notes, or whether additional treatment was available.

Finally, the ALJ determined the evidence provided by Dr. Rao, to be in conflict with the opinion rendered by Dr. Williams. In the opinion of the Court, there is no conflict whatsoever. Dr. Williams and Dr. Rao tested different areas of Plaintiffs digestive tract. The fact that one end of the tract functions normally, does not detract from the finding that the other end is diseased and does not function. The results of Dr. Rao's tests would, in no way, affect the opinion of Dr. Williams.

The ALJ's credibility finding consists mainly of boilerplate language seen in most disability decisions which come before the Court. *See Parker v. Astrue,* 597 F.3d 920, 921–22 (7th Cir.2010) in which the Court wrote:

The administrative law judge's opinion states that "after considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments would reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." This is a piece of boilerplate that appears in virtually identical language in both these cases as well as in a third social security disability case argued to us the same day. It is not only boilerplate; it is meaningless boilerplate. The statement by a trier of fact that a witness's testimony is "not *entirely credible" yields no clue to what weight the trier of fact gave the testimony.*

Immediately following this boilerplate the opinion states "there is little objective evidence to support the claimant's allegations of extreme pain." By "objec-

tive evidence" it is apparently from what follows that the administrative law judge meant verifiable medical evidence, such as an x-ray or blood test or other medical procedure that would establish the etiology (cause) of a patient's symptoms with something approaching certainty. The opinion describes the procedures that the Plaintiff had undergone and concludes that "the medical record shows that her doctors do not know what is causing her reported extreme pain" and that "the claimant's pain is well out of proportion to any objective findings."

■ The ALJ's credibility finding in this case, is no less boilerplate than that in the cases before the Court in *Parker*. In finding that the "objective medical evidence" did not support Plaintiff's complaints, the ALJ was, in effect, substituting his judgment for the opinion of Plaintiff's treating Gastroenterologist. This, as the Court of Appeals has said many times, is error. *See, e.g. Easter v. Bowen*, 867 F.2d 1128, 1131 (8th Cir.1989).

■ At the hearing of July 10, 2007, a vocational expert testified that if Plaintiff is unable to maintain a regular, 8 hour per day work schedule, then competitive work is not possible. In light of the expert medical opinion of Dr. Williams and Plaintiff's testimony regarding the effects of his impairment, it stands to reason that a normal work schedule is out of the question for him. Ultimately, the issue in this case, as in all disability cases is "Is an individual person disabled within the meaning of the Social Security Act, so that he or she is entitled to disability insurance payments from the government." Judge Richard S. Arnold, *Mr. Justice Brennan And The Little Case*, 32 Loy. L.A.L. Rev. 663, 669. Here, Plaintiff has proved his claim with medical evidence. No further proceedings are necessary.

Lastly the Court cannot and should not overlook that fact that this application was filed with the Social Security Administration over eight and one half years ago. And our the Eighth Circuit Court of Appeals has noted many times some explanation seems needed. *See Snead v. Barnhart*, 360 F.3d 834, 836, footnote 1 (8th Cir.2004) and cases cited there. Social Security Administration workers are among the most dedicated in our country. The same can be said for the State of Iowa employees of the Department of Education, who perform the first two steps of the evaluation process mandated by the law. However, hundreds of thousand of our wage earners and non-wage earners make claims that must be adjudicated. Following administrative actions claimants have the right to contest their denial in our courts. Carefully evaluating these claims is important work and takes time. As Judge Arnold pointed out in his article cited above:

> There are proposals as you may know now, for the federal courts to be divested of their social-security jurisdiction. Many judges would like to get rid of the cases, because they're dull, they're insignificant, they don't titillate the legal imagination. I personally hope that we don't get rid of the cases, because people like Mr. Michalic or people like a social-security claimant need a place to go where they can be heard by a generalist judge who is not so routinized that these cases become just one more instance on an assembly line.

Wisdom like that of Judge Arnold doesn't come along that often and so when we see it we should remember how important Article III jurisdiction is to our system. So, while the delays here have been extraordinarily long, the case does serve to remind us of the importance of the Court's jurisdiction in this area of the law. Finally, the Court, in thinking about the length

of time it has taken to bring this case to a conclusion, is reminded of Judge Goldberg's words in *J.H. Rutter Rex Manufacturing Co., Inc. v. N.L.R.B.*, 473 F.2d 223, 243 (5th Cir.1973): "In summary, we deplore the delay, but we would not substitute one hour of efficiency for one moment of Justice."

### CONCLUSION AND DECISION

It is the holding of this Court that Commissioner's decision is not supported by substantial evidence on the record as a whole. This case is reversed and remanded for an award of benefits.

The judgment to be entered will trigger the running of the time in which to file an application for attorney's fees under 28 U.S.C. § 2412(d)(1)(B) (Equal Access to Justice Act). *See also, McDannel v. Apfel*, 78 F.Supp.2d 944 (S.D.Iowa 1999) (discussing, among other things, the relationship between the EAJA and fees under 42 U.S.C. § 406 B), and LR 54.2(b)[1]. *See also, Gisbrecht v. Barnhart*, 535 U.S. 789, 122 S.Ct. 1817, 1821, 152 L.Ed.2d 996 (2002); *Mitchell v. Barnhart*, 376 F.Supp.2d 916 (S.D.Iowa July 15, 2005).

IT IS SO ORDERED.

---

1. N.B. Counsel is reminded that LR 54.2(b), states that an EAJA application "must specifically identify the positions taken by the government in the case that the applicant alleges were not substantially justified."